*In re:* JOSÉ CASTRO FIGUEROA, querellado.

*Número:* D-65-2    *Resuelto:* 27 de junio de 1968

*J. B. Fernández Badillo, Procurador General, Rodolfo Cruz Con-
treras, Procurador General Interino, J. F. Rodríguez Rivera,
Procurador General Auxiliar, y Elpidio Arcaya, Procurador
General Auxiliar,* abogados de El Pueblo; José Castro Fi-
gueroa, *pro se; E. L. Belén Trujillo* y *Ángel F. Vélez Pozo,*
abogados del querellado.

PER CURIAM: El Procurador General formuló seis cargos
al abogado José Castro Figueroa por conducta profesional.
Negados los mismos el Tribunal designó al entonces Juez
Superior Hon. Eduardo Ortiz Quiñones para que en pre-
sencia de ambas partes y en calidad de Comisionado Especial
oyera y recibiera, bajo juramento, la prueba que éstas pu-
dieran presentarle, y para que una vez oída la prueba
practicada, la certificara y radicara en la Secretaría del
Tribunal con sus conclusiones de hecho. Oída y recibida la
prueba oral y documental en vista pública, en presencia de
las partes, y certificada la misma, el Comisionado Especial
sometió el siguiente Informe con sus Conclusiones de Hecho:

"De los testimonios vertidos en las vistas celebradas en 2,
3, 5 y 9 de mayo de 1966 y la prueba documental presentada
en las mismas, el Comisionado Especial llegó a las siguientes
determinaciones de hechos en cada uno de los cargos:

### I

*Primer Cargo:*

El querellado, José Castro Figueroa, constantes las relaciones
de abogado y cliente entre él y el señor Roberto Sierra Mayol,
observó una conducta inmoral e impropia de un abogado al
*apropiarse* indebida e ilegalmente de un cheque por la can-
tidad de tres mil trescientos treinta dólares ($3,330) pertene-
ciente a dicho señor Sierra Mayol y previamente endosado por
éste, procediendo dicho abogado a disponer de dicho cheque y
apropiándose de su valor equivalente en dinero para su propio
y personal beneficio y dando lugar a que el señor Sierra Mayol
iniciara una acción civil en contra suya para recobrar la suso-
dicha cantidad de dinero.

En fecha 14 de mayo de 1965 el Tribunal Superior, Sala
de San Juan, dictó sentencia condenando al aquí querellado

'a pagar (al señor Sierra Mayol) la suma de $3,330.00 con intereses a razón del 6% anual desde el día 21 de enero de 1964 hasta la fecha de su pago, más las costas y $350.00 por concepto de honorarios de abogado.'

*Determinaciones de Hechos:*

1. El señor Roberto Sierra Mayol contrató por $100.00 los servicios profesionales del Lic. José Castro Figueroa para que continuara representándolo ante el Hon. Tribunal Superior de Puerto Rico, Sala de San Juan, en un pleito de divorcio, civil número RF-63-1239, en el cual era demandado y contra-demandante, y cuya representación había renunciado el Lic. Sánchez Bahamonde por encontrarse enfermo. Este litigio terminó en una sentencia negando el divorcio.

2—Posteriormente el Lic. Castro Figueroa asumió la representación de los intereses del Sr. Sierra Mayol en un pleito por Alimentos civil número RF-63-2850, María Piñero vda. de Mayol y otros vs. Roberto Sierra Mayol y otros, ante la Sala de San Juan del Tribunal Superior de Puerto Rico, en otra acción de Divorcio radicada en 13 de noviembre de 1963 por su esposa bajo el número 63-3496 ante la Sala de Caguas del Hon. Tribunal Superior de Puerto Rico; y en dos incidentes de Desacato ante el Hon. Tribunal Superior, Sala de Caguas, en 10 de junio de 1964 y 11 de septiembre de 1964, por no cumplir una orden de pasar pensión alimenticia a su hija.

3—En enero de 1964, el Sr. Sierra Mayol entregó al Lic. Castro Figueroa el cheque número 41,334 girado por la Caribbean Construction Corporation, a favor de Roberto Sierra Mayol y Rosanna López de Sierra por la suma de $3,330.00. Este cheque había sido certificado por la Sucursal de Santurce del Banco de Ponce en 25 de junio de 1963 bajo el número 3-2539 y estaba endosado por el Sr. Sierra Mayol. El Lic. Castro Figueroa se comprometió a obtener una autorización del Tribunal para que el Sr. Sierra Mayol pudiera hacer efectivo dicho instrumento, ya que su esposa se negaba a endosar el mismo.

4—En 17 de enero de 1964 el Lic. Castro Figueroa y el Lic. Carmelo Avila Medina, representante legal de la Sra. Rosanna López de Sierra en el caso de divorcio ante el Tribunal Superior, Sala de Caguas, suscribieron una estipulación, que fue aprobada por la Sra. López en 20 de enero de 1964, aceptando que el importe del cheque antes mencionado era un bien privativo que

pertenecía exclusivamente al Sr. Sierra Mayol. La Sra. López procedió a endosar el cheque, el cual continuó en posesión del Lic. Castro Figueroa.

5—El Lic. Castro Figueroa añadió su endoso al cheque antes mencionado, y en 20 de enero de 1964 lo presentó al cobro en el First Federal Savings & Loan Association of Puerto Rico de Santurce, Puerto Rico, recibiendo su importe de $3,330.00.

6—A los múltiples requerimientos del Sr. Sierra Mayol relacionados con el cheque mencionado, el Lic. Castro Figueroa contestaba que no le había sido posible obtener la autorización del Tribunal para hacer efectivo el mismo. En abril de 1964 el Sr. Sierra Mayol se enteró que el cheque no estaba en la Sala de Caguas del Tribunal Superior y sus nuevos requerimientos al Lic. Castro Figueroa resultaron en más promesas y excusas pero no obtuvo suma alguna.

7—El Sr. Sierra Mayol no ha pagado al Lic. Castro Figueroa por sus servicios profesionales. El lunes 21 de septiembre de 1964, el Sr. Sierra Mayol y su señora madre, doña Cecilia Mayol de Sierra, lograron entrevistarse con el Lic. Castro Figueroa y le exigieron la entrega inmediata del cheque. Éste prometió ir al día siguiente al Tribunal de Caguas a obtener la autorización y entregar el dinero el jueves a la una de la tarde. Ese día no lo localizaron en su oficina.

8—Unos días más tarde, el Sr. Sierra Mayol volvió a visitar la oficina del Lic. Castro Figueroa y su secretaria, la Srta. Isabel Pizarro Cachola, le entregó una cuenta fechada el 28 de septiembre de 1964, cobrándole $1,500.00 en cada uno de los casos de divorcio, $900.00 en el caso de alimentos, y $100.00 en cada una de las mociones de desacato; haciendo un total de $4,600.00, contra los cuales aparecían abonados los $3,330.00 quedando un saldo a favor del Lic. Castro Figueroa de $1,300.00. Acompañaba a la cuenta una nota que decía: 'Roberto:—Si estás de acuerdo con la cuenta firma la copia y me la dejas en la oficina. Gracias. (firmado) José Castro Figueroa.'

9—El Sr. Sierra Mayol contrató los servicios profesionales del Lic. Joseph W. Kiefer para que cobrara al Lic. Castro Figueroa el importe del cheque. El Lic. Castro Figueroa informó personalmente al Lic. Kiefer que iba a entregar el dinero, pero no lo hizo.

10—En 26 de octubre de 1964, el Lic. Kiefer, en representación del Sr. Sierra Mayol, radicó una demanda en cobro de dinero bajo el número 64-4340 ante el Hon. Tribunal Superior, Sala de San Juan. El Hon. Juez Luis R. Polo, dictó sentencia en rebeldía en 14 de mayo de 1965. En 9 de julio de 1965 el Lic. Castro Figueroa radicó una Moción de Reconsideración solicitando se dejara sin efecto la sentencia en rebeldía, se reabriera el caso y aceptando que tenía el dinero en su caja fuerte a disposición del Sr. Sierra Mayol, y que 'si no quiere pagar los honorarios de abogado del demandado, o que el demandado debe cobrarle, esto no es causa suficiente para negarse a recibir su dinero que el demandado tenía custodiado.' Se dejó sin efecto la sentencia en 6 de agosto de 1965.

11—En 18 de agosto de 1965 el Lic. Kiefer dirigió una carta certificada al Lic. Castro Figueroa requiriéndole el pago del dinero o su consignación en el Tribunal y no obtuvo contestación. En 15 de octubre de 1965 radicó una demanda enmendada pidiendo triple daño. En su contestación enmendada de 12 de noviembre de 1965, el Lic. Castro Figueroa aceptó tener el dinero depositado en su oficina a disposición del Sr. Sierra Mayol pero alegando que éste rehusaba aceptarlo. En 31 de enero de 1966 se celebró una vista en rebeldía ante el Hon. Juez Manuel A. Moreda pero la misma fue dejada sin efecto porque no se había tomado en consideración una moción de suspensión interpuesta en 25 de enero de 1965 y la cual en ese momento no aparecía unida a los autos. No se realizaron ulteriores gestiones judiciales en este pleito.

12—Desde el 23 de enero de 1964 y hasta el presente, el Lic. Castro Figueroa ha retenido bajo su absoluto control y dominio la suma de $3,300.00 perteneciente al Sr. Sierra Mayol y no ha entregado dicha suma a pesar de los múltiples requerimientos judiciales y extrajudiciales que le han sido hechos por el Sr. Sierra Mayol y el abogado de éste, el Lic. Kiefer.

13—A pesar de que en su contestación a los cargos de esta querella reitera una vez más que el dinero está en su poder y a disposición del Sr. Sierra Mayol, el Lic. Castro Figueroa no ha realizado ninguna actuación positiva y efectiva, judicial o extrajudicial, para entregar dicha suma a su dueño o consignarla en el tribunal correspondiente.

## II

*Segundo Cargo:*

El querellado, José Castro Figueroa, en el curso de sus gestiones como abogado en la partición y liquidación de la herencia de Isaías Vicente Parés, advino en posesión de la cantidad de mil cuatrocientos diecisiete dólares con treinta y nueve centavos ($1,417.39) pertenecientes a la heredera Sra. Gloria Norberta Catalina Parés Cosme, de cuya cantidad de dinero se apropió el querellado para su propio y personal beneficio, habiéndose negado a hacer entrega de la misma a su legítima dueña, a pesar de las gestiones hechas por ésta y por su abogado el Lic. Olaguibet A. López Pacheco; al así actuar el querellado observó una conducta inmoral e impropia de un abogado.

*Determinaciones de Hechos:*

1—Don Isaías Vicente Parés falleció intestado en 27 de octubre de 1959. Entre los diecisiete (17) herederos, judicialmente declarados mediante Resolución de la Sala de San Juan del Tribunal Superior de Puerto Rico, en el caso 60-1338, estaba la Sra. Gloria Norberta Catalina Parés Cosme.

2—A su fallecimiento, don Isaías dejó bienes relictos consistentes en (a) un solar de 190 m/c y casa de madera, techada de zinc, en la Calle 13, Barrio Obrero, la cual fue vendida en $5,100.00, (b) un solar de 190 m/c y casa de madera, techada de zinc con un mirador y un ranchón en la Calle #10, Bo. Obrero, Puerto Rico, la cual fue vendida en $4,300.00; y (c) $4,215.47 en efectivo depositado en el Banco Popular de Puerto Rico; haciendo un total de $13,615.47. De ese total, en 11 de mayo de 1962, trece (13) de los herederos aceptaron se dedujera una donación de $800.00 para doña Adolfina Ortiz de Parés; contribuciones, $106.36; agua y luz, $93.66; gastos entierro, $1,014.50; otros $106.00; y $2,300.00 de honorarios de abogado; para un total de $4,429.52; quedando un remanente de $9,185.66, que dividido entre nueve (9) cuotas hereditarias, correspondían $1,020.66 a cada uno de los ocho (8) hermanos del de cujus y $113.41 para cada uno de nueve (9) sobrinos.

3—Don Luis Parés López y su esposa, doña Adolfina Ortiz de Parés, quedaron encargados de tramitar la liquidación y partición de la herencia y para asistirlos en ello contrataron los servicios profesionales del Lic. Castro Figueroa.

4—El Lic. Castro Figueroa gestionó la compraventa de los inmuebles, preparó varios documentos y obtuvo, entre otras, la firma de doña Gloria Norberta Catalina Parés Cosme en algunos de ellos. La señora Parés Cosme no aparece firmando un documento sin numerar ni fechar, intitulado 'Escritura de Compraventa', en el que se describe la compraventa del solar de la calle 13 a favor de don Luis González Rivera por la suma de $5,100.00.

5—El Lic. Castro Figueroa entregó a don Luis Parés López la suma de $1,020.66 y a doña Adolfina de Parés la suma de $800.00 como saldo de sus participaciones en la herencia de don Isaías.

6—Al día siguiente de entregar las participaciones de los esposos Parés-Ortiz, el Lic. Castro Figueroa en compañía de doña Adolfina fue a visitar a la Sra. Parés Cosme pero ésta se negó a recibir la suma ofrecida. En otra ocasión en que fueron hasta la residencia de doña Adolfina no les fue posible entrevistarla.

7—Más tarde, y durante los próximos seis años, la Sra. Parés Cosme personalmente y por mediación del Lic. Olaguibet López Pacheco ha realizado numerosas gestiones para obtener del Lic. Castro Figueroa la suma que le correspondía como herencia de su hermano, resultando infructuosas todas y cada una de esas gestiones.

8—Desde 1959 hasta el presente, el Lic. Castro Figueroa ha retenido bajo su absoluto control y dominio la participación que del caudal hereditario de don Isaías corresponde a la Sra. Parés Cosme y, contrario a sus manifestaciones verbales y en la contestación a los cargos de la querella en el sentido de que dicha suma está a disposición de su dueña, durante los últimos seis años no ha realizado actuación alguna dirigida a hacer entrega real y efectiva de la misma.

## III

*Tercer Cargo:*

El querellado, José Castro Figueroa, en el desempeño de su profesión de abogado notario autorizó una escritura de compraventa de un inmueble, en 29 de julio de 1963, en cuya propiedad el menor Luis A. Pérez Márquez tenía una participación, comprometiéndose el querellado con el comprador a hacer ciertas gestiones judiciales para que el referido menor recibiera su

participación, esto es, que 'terminara ciertas gestiones con relación a un poder,' y reteniendo la cantidad de dos mil doscientos dólares ($2,200.00) para tales fines; siendo la realidad que para la fecha anteriormente relacionada aún no se había iniciado el procedimiento judicial para que se autorizara a dicho menor a vender su participación, lo cual vino a quedar iniciado mediante la petición radicada en 8 de abril de 1964 en el caso Ex Parte Luis A. Pérez Márquez, RF-64-1054. El querellado ha retenido para sí durante todo este tiempo y hasta el presente la susodicha cantidad de dos mil doscientos dólares ($2,200.00) confundiéndola con sus bienes propios, haciéndole creer a su cliente Juan Rivera Lima que dicha cantidad de dinero pertenecía ya al menor Luis A. Pérez Márquez. Tal conducta del querellado es inmoral e impropia de un abogado.

*Determinaciones de Hechos:*

1—En 18 de septiembre de 1963 don Juan Rivera Lima retiró $4,200 de su cuenta de banco, tomó $3,000 prestados a su primo, Perfecto Rivera Lima, y con $500 que tenía efectivo completó la suma de $7,700.00. Al día siguiente llevó esa suma a la oficina del Lic. José Castro Figueroa para pagarla como causa en la compraventa de un inmueble.

2—En 19 de septiembre de 1963, doña Aurea Rodríguez, doña Antonia Rodríguez, doña Benedicta Márquez, representando a doña Luz María Márquez Rodríguez, y don Elviro Santiago Ferrer, en representación del Sr. Luis Pérez Montilla, padre del menor Luis A. Pérez Márquez, suscribieron y otorgaron ante el Lic. Castro Figueroa un documento de compraventa de sus intereses en un inmueble a favor de don Juan Rivera Lima por la suma de $7,700.00. Esta suma total de $7,700 fue entregada al Lic. Castro Figueroa para distribuirla en porciones de $2,200 para cada una de las primeras dos comparecientes, $1,100 para los otros dos vendedores y $1,100 para honorarios de abogado.

3—El Lic. Castro Figueroa explicó a los señores Juan Rivera Lima y Elviro Santiago Ferrer que retendría la suma correspondiente al menor hasta que obtuviera una autorización judicial para 'englobar la escritura del menor a la escritura de los mayores,' pero no les explicó que no se había consumado la compraventa del interés inmobiliario del menor en favor del

Sr. Rivera Lima.

4—Tanto el Sr. Rivera Lima como el Sr. Santiago Ferrer hicieron numerosas gestiones urgiendo al Lic. Castro Figueroa que completara los trámites y entregara la suma que correspondía al menor Pérez Márquez, pero lo único que recibieron fueron excusas de porqué tardaba la resolución del asunto.

5—Luego de numerosos requerimientos, el Lic. Castro Figueroa entregó al Sr. Rivera Lima copia simple de la escritura número 66, fechada en 29 de julio de 1963, en la cual no se hacía mención de la participación que en el inmueble correspondía al menor Pérez Márquez y sólo se consignaba la suma de $5,500 como el precio de venta, sin mencionar los restantes $2,200.00.

6—En 8 de abril de 1964 el Lic. Castro Figueroa inició ante el Tribunal Superior de Puerto Rico, Sala de San Juan, bajo el número RF-64-1054, un procedimiento de Autorización Judicial para vender la participación del menor Pérez Márquez en el inmueble antes mencionado. En 21 de mayo de 1965 el Hon. Juez Lucas F. Serbiá Córdova dictó Resolución autorizando la venta en pública subasta del condominio perteneciente al menor Pérez Márquez.

7—En 24 de noviembre de 1965 se ordenó la publicación de los edictos y la celebración de la subasta por un precio no menor de $1,100.00. En 26 de noviembre de 1965 se publicó el Aviso de Subasta para tener efecto en 21 de diciembre de 1965. El Sr. Rivera Lima leyó los edictos publicados en los periódicos y al no serle posible comunicarse con el Lic. Castro Figueroa, contrató los servicios profesionales del Lic. Augusto Burgos Mundo para representarlo en lo relacionado con la pública subasta.

8—En 15 de diciembre de 1965, a través de sus abogados, el Sr. Rivera Lima radicó una Moción de Intervención y otra solicitando se paralizaran los procedimientos. El Tribunal no actuó sobre esas mociones. El 21 de diciembre de 1965 se suspendió la celebración de la subasta por no haberse presentado la certificación de haberse publicado los edictos, sin que hasta el presente se hayan realizado otras gestiones judiciales.

9—Desde el 19 de septiembre de 1963 el Lic. Castro Figueroa ha retenido bajo su absoluto control y dominio la suma de $1,100.00 perteneciente al Sr. Juan Rivera Lima, haciéndoles creer al Sr. Rivera Lima y al Sr. Santiago Ferrer que habían

realizado la compraventa del interés del menor Pérez Márquez en un inmueble y que sólo faltaba un trámite adicional ante el tribunal que necesariamente resultaría en el perfeccionamiento del traspaso en favor del señor Rivera Lima.

## IV

*Cuarto Cargo:*

El querellado, José Castro Figueroa, observó una conducta inmoral e impropia de un abogado, la que surge de los hechos que a continuación se describen: en fecha 27 de abril de 1959 el querellado recibió la cantidad de $900.00 de parte del Sr. José Nazario González, cantidad proveniente de una transacción mediante la cual el Sr. Víctor Ramos Santana vendía al señor Nazario González una casa que supuestamente le pertenecía a aquél como participación suya en la herencia de su finada esposa, Sra. Matilde Vega. El querellado se comprometió en esta ocasión con las partes en dicha transacción a radicar el correspondiente recurso judicial con el fin de que quedara aclarada la cuestión de la participación hereditaria del señor Ramos Santana y de clarificar el título sobre la casa objeto de la transacción de referencia. El querellado, no obstante, procedió a mezclar el referido dinero con sus bienes propios sin el consentimiento de sus clientes permitiendo que el caso que radicara ante el tribunal correspondiente fuera archivado por falta de instancia en 13 de junio de 1962, sin dar cuenta alguna a sus clientes hasta el presente, tanto de los bienes que indebidamente poseía de éstos como de su abandono del caso de referencia.

*Determinaciones de Hechos:*

1—En 27 de abril de 1959 los señores José Nazario González y Víctor Ramos Santana contrataron los servicios profesionales del Lic. José Castro Figueroa para perfeccionar una transacción de compraventa de un inmueble en el cual tenían participación los herederos de la finada esposa del Sr. Ramos Santana, doña Matilde Vega.

2—Como pago de la transacción de compraventa el Sr. Nazario González dio la suma de $900.00. Además el Sr. Ramos Santana otorgó un contrato de arrendamiento con opción a compraventa en favor del Sr. Nazario González, quien tomó posesión del inmueble inmediatamente. El Lic. Castro Figueroa retuvo los $900 entregando un recibo por ellos a nombre del Sr. Ramos

Santana y su cuñado Juan Vega y se comprometió a realizar las gestiones necesarias para ultimar la transacción de compraventa.

3—En 16 de noviembre de 1959 el Lic. Castro Figueroa radicó una acción de división y partición de bienes hereditarios, Víctor Ramos Santana v. Juan Vega Vázquez y la Sucn. de William Vega, en el Tribunal Superior de Puerto Rico, Sala de San Juan, bajo el número 59-7571. Contestó y reconvencionó Juan Vega Vázquez, pero no aparece se emplazara miembro alguno de la Sucn. de William Vega. En 13 de junio de 1962 se dictó sentencia archivando esta acción por abandono, a tenor con la Regla 11 de las de Administración del Tribunal de Primera Instancia.

4—Después de innumerables gestiones encaminadas a lograr que el Lic. Castro Figueroa terminara las gestiones que le habían sido encomendadas, en 25 de mayo de 1964, el Sr. Ramos Santana obtuvo de la Secretaría del Tribunal Superior, Sala de San Juan, copia certificada de la sentencia de archivo antes mencionada. Confrontando [sic] con dicha resolución y la solicitud de que devolviera el dinero y los documentos relacionados, el Lic. Castro Figueroa rehusó hacerlo y procedió a radicar una moción de reapertura y señalamiento en 28 de mayo de 1964, la cual fue declarada sin lugar sin perjuicio en 2 de junio de 1964. Desde entonces no se ha realizado ninguna otra gestión judicial.

5—En 27 de agosto de 1964 el Sr. Víctor Ramos Santana se dirigió al Director Ejecutivo del Colegio de Abogados denunciando la conducta del Lic. Castro Figueroa e indicando su deseo de recobrar el dinero y los documentos que estaban en su poder pues había 'prescindido de sus servicios de manera irrevocable.' Copia de esa comunicación fue enviada al Lic. Castro Figueroa en 6 de octubre de 1964, quien no actuó con relación a la misma.

6—Desde el 27 de abril de 1959 hasta el presente, el Lic. Castro Figueroa ha retenido bajo su absoluto control y dominio la suma de $900 que le fuera encomendada por los señores José Nazario González y Víctor Ramos Santana como parte de una transacción de compraventa con relación a la cual el Lic. Castro Figueroa se comprometió a gestionar su perfeccionamiento, y cuyas gestiones abandonó y no ha reanudado desde 1962.

# V

*Quinto Cargo:*

El querellado, José Castro Figueroa, observó una conducta inmora le impropia de un abogado, cuando constantes las relaciones de abogado y cliente entre él y el Sr. Ramón Figueroa, tomó de éste en calidad de préstamo la cantidad de $2,500.00, negándose más tarde a pagarle a su acreedor una gran parte de dicha suma de dinero y dando lugar a que se radicara una acción en cobro de dinero en contra suya en la cual recayó sentencia condenatoria en 26 de octubre de 1962. El querellado, no empece la sentencia dictada en su contra y de las subsiguientes gestiones de cobro hechas por el señor Figueroa persistió y aún persiste en su negativa en cumplir con su obligación, a pesar de que contemporáneamente con dicha sentencia y en fechas posteriores contaba con medios económicos suficientes para cumplir dicha obligación.

*Determinaciones de Hechos:*

1—En 1958 el Lic. José Castro Figueroa tomó de su cliente, el Sr. Ramón Figueroa Franco, la suma de $2,500 en calidad de préstamo. Para evidenciar esta deuda otorgó dos pagarés: uno fechado en 14 de octubre de 1958 por la suma principal de $2,000 con vencimiento en 31 de marzo de 1959, y otro fechado en 17 de noviembre de 1958 por la suma principal de $500 con vencimiento en 17 de mayo de 1959.

2—En 29 de junio de 1960 el Lic. José Castro Figueroa y su esposa doña Juanita Ramírez vendieron un inmueble por el precio de $100,000, de los cuales recibieron la suma de $50,000 habiendo retenido el comprador la suma de $50,000 para pagar una hipoteca que gravaba dicha propiedad.

3—En 23 de noviembre de 1960, el Lic. Ernesto Juan Fonfrías se dirigió por carta al Lic. Castro Figueroa requiriéndole el pago de las sumas adeudadas, que ya estaban vencidas y eran líquidas y exigibles. En 12 de diciembre de 1960 le envió otra comunicación acusando recibo de una carta del Lic. Castro Figueroa de 7 de diciembre, confirmando también una conversación entre ellos y aceptando que éste había hecho abonos por $700.00. Asimismo, se concedía al Lic. Castro Figueroa hasta el 28 de febrero de 1961 para saldar la deuda. En 18 de febrero, 20 de marzo, 17 de abril, 26 de junio, 20 de julio y 9 de octubre de 1961, el Lic. Fonfrías envió sendos requerimientos de pago

al Lic. Castro Figueroa, quien abonó otros $140 en julio de 1961 y en 13 de octubre de 1961 prometió saldar la deuda o hacerle un abono sustancial si lograba vender una de sus propiedades.

4—En 19 de abril de 1962 el Lic. Castro Figueroa y su esposa doña Juanita Ramírez vendieron un inmueble en $30,000, de los cuales recibieron $14,000, habiendo retenido el comprador la suma de $16,000 para pagar una hipoteca que gravaba la propiedad.

5—En 12 de enero de 1962 el Sr. Ramón Figueroa, a través de los Lics. Fonfrías y Fausto Ramos Quirós, radicó demanda en cobro de dinero ante el Hon. Tribunal de Distrito, Sala de San Juan, bajo el número 62-213, exigiendo el pago de $1,600.00. En 25 de junio de 1962 contestó por su propio derecho el Lic. Castro Figueroa y negó todas las alegaciones de la demanda. En 25 de octubre de 1962 se celebró la vista sin la comparecencia del Lic. Castro Figueroa y en 26 de octubre de 1962 el Hon. Juez Roberto Veray Torregrosa dictó sentencia condenando al Lic. Castro Figueroa a pagar $1,600.00 más intereses al tipo legal, costas y $200.00 de honorarios de abogado. En 26 de octubre de 1962 se archivó en autos copia de la notificación de sentencia.

6—Investigaciones de rutina ordenadas por el Lic. Fonfrías no revelaron que hubieran propiedades inscritas en el Registro de la Propiedad a nombre del Lic. Castro Figueroa y aquél no continuó las gestiones para la ejecución de la sentencia. Dicha sentencia no ha sido cobrada hasta el presente.

7—En 21 de junio de 1963, el Lic. Fonfrías acusó recibo de una carta del Lic. Castro Figueroa de 14 de junio de 1963, aceptó que el Lic. Castro Figueroa dedujera la suma de $760 al monto de la sentencia y pagara únicamente $1,246.00 en saldo total de principal, intereses y honorarios de abogado. El Lic. Castro Figueroa no pagó.

8—Desde su vencimiento en 1959, el Lic. Castro Figueroa adeuda al Sr. Ramón Figueroa Franco una suma de dinero líquida y exigible y a pesar de innumerables requerimientos judiciales y extrajudiciales y de haberse obtenido sentencia final y firme condenándolo a pagar, no ha pagado dicha suma a pesar de que durante el tiempo en que la deuda ha estado vencida, líquida y exigible ha poseído bienes suficientes para pagar la misma.

*Sexto Cargo:*

El querellado, José Castro Figueroa, observó una conducta inmoral e impropia de un abogado mientras en su carácter de abogado realizaba gestiones respecto a la liquidación de la herencia del finado Juan Duprey. Esta conducta reprochable consiste de lo siguiente:

1—El querellado radicó el caso número 63-3131 ante el Tribunal Superior, Sala de San Juan, en el cual aparece Carmen Gregoria Valdés Duprey como parte peticionaria en un procedimiento sobre declaratoria de herederos. Sin embargo, en una declaración jurada prestada por el mismo querellado éste manifestó lo siguiente: '[e]lla (Carmen Gregoria Valdés Duprey) no me ha entregado ningún caso a mí ni ha podido probar que es parte de la sucesión.'

2—Constantes las gestiones profesionales anteriormente relacionadas, el querellado hizo que la Sra. Carmen Gregoria Valdés Duprey endosara un cheque a nombre de ésta por $450, producto de una casa perteneciente a la sucesión que fuera adquirida por la Autoridad de Acueductos y Alcantarillados de Puerto Rico y una vez endosado dicho cheque el querellado procedió a firmarlo y cambiarlo para su propio y personal beneficio.

3—El querellado tomó en su poder, en contra de los deseos de su cliente, una libreta de ahorros del banco Popular, perteneciente a la Sucesión la cual refleja un balance de $444.43.

*Determinaciones de Hechos:*

1—En 7 de enero de 1953, Juan Duprey Ullanga depositó en la cuenta de ahorros número 50118 en el Banco Popular de Puerto Rico la suma de $1,150.00. En 13 de enero de 1953 retiró $300; en 26 de enero, 20 de febrero y 16 de marzo de 1953 retiró partidas de $30.00; y en 13 de abril de 1953 retiró $400.00, quedando un saldo de $360.00. Hasta el 3 de mayo de 1963 se anotaron en la libreta representativa de esta cuenta intereses por la suma de $84.43, elevando su saldo a $444.43.

2—En 9 de marzo de 1953, don Juan Duprey otorgó la escritura número 18 ante el notario público don Gonzalo Ardín hipotecando en $1,375 a favor de don Rodulfo Rodríguez Rivera un inmueble sito en la calle 10 del Barrio Obrero de Santurce. Esta deuda devengaba intereses al nueve por ciento anual y vencía en 9 de marzo de 1954.

3—En 23 de abril de 1953, don Juan Duprey Ullanga falleció intestado. Entre sus bienes relictos dejó un inmueble en la calle 13 del Barrio Obrero, otro en la calle 10 del Barrio Obrero y la cuenta de banco antes mencionada.

4—A raíz del fallecimiento, la Sra. Genara Duprey, hija del de cujus, entregó al Lic. Castro Figueroa la libreta de banco descrita en el primer párrafo.

5—En 1955, la Autoridad de las Fuentes Fluviales expropió el inmueble de la calle 13 y siguiendo las instrucciones del Lic. Castro Figueroa se hizo el cheque de $450 en pago de dicha propiedad a favor de la Sra. Carmen Valdés Duprey. Por instrucciones del Lic. Castro Figueroa, la Sra. Valdés Duprey endosó el cheque y se lo entregó al Lic. Castro Figueroa, quien procedió a endosarlo, cambiarlo y apropiarse de su importe.

6—Desde el 8 de mayo de 1953 hasta el 8 de abril de 1962, el Lic. Castro Figueroa pagó la suma de $8.25 mensuales al Sr. Rodulfo Rodríguez, correspondiente a los intereses que devengaba el préstamo hipotecario relacionado en el segundo párrafo.

7—En 13 de febrero de 1962, Rodulfo Rodríguez escribió al Lic. Castro Figueroa en relación a la venta del inmueble hipotecado, urgiéndole a que terminara este negocio cuanto antes para evitar tener que llevar el caso a la corte.

8—En 15 de junio de 1962 se otorgó ante el Lic. Castro Figueroa la escritura número 66 mediante la cual don Rodulfo Rodríguez cedía a don Catalino Figueroa Cruz el crédito hipotecario que gravaba la propiedad de la Sucesión de Juan Duprey. El Sr. Figueroa Cruz firmó esta escritura sabiendo, al igual que el Lic. Castro Figueroa, que era falso su título de comprador, que no había entregado causa alguna y que no tenía interés legítimo en dicha transacción, siendo la persona verdaderamente interesada el propio Lic. Castro Figueroa.

9—Tras continuos requerimientos de la Sra. Valdés Duprey relacionados con los $450, en 3 de mayo de 1963 el Lic. Castro Figueroa le entregó la libreta de banco número 50118 y le dio instrucciones de que la llevara al banco para que anotaran los intereses y se la devolviera para que continuara bajo su custodia. Así lo hizo la Srta. Valdés Duprey.

10—En 22 de julio de 1963 radicó el Lic. Castro Figueroa un procedimiento de declaratoria de herederos ante el Hon. Tribunal Superior, Sala de San Juan, bajo el número CS-63-3131 y

el epígrafe Ex Parte Carmen Gregoria Valdés Duprey. Entre la prueba documental falta aquella que acredite que la finada Providencia Duprey, madre de la Sra. Valdés Duprey, fuera hija de don Juan Duprey. En 23 de julio de 1964 el Tribunal expidió una orden requiriendo que se expusieran las razones por las cuales no debía archivarse este caso. En 28 de julio de 1964 se radicó una moción solicitando no se archivara y se hiciera un señalamiento. Entre 14 de agosto de 1964 y 5 de marzo de 1965 se pospuso siete veces la vista de este caso por incomparecencia de la peticionaria y su abogado. En 16 de marzo de 1966 se expidió otra orden para exponer las razones por las cuales no debía archivarse. No aparece ninguna otra providencia o gestión judicial ya que el 24 de marzo de 1966 el expediente fue remitido al Hon. Tribunal Supremo de Puerto Rico.

11—En declaración jurada en San Juan, Puerto Rico, a 28 de septiembre de 1964 ante el Lic. Manuel Tirado Viera, procurador general auxiliar, el Lic. Castro Figueroa dijo que la Sra. Valdés Duprey no le había entregado ningún caso para su tramitación legal; que sus servicios profesionales habían sido contratados por doña Genara Duprey, con quien no se había comunicado personalmente hacía ocho años pero sí a través de la Sra. Valdés Duprey; y que el procedimiento de declaratoria de herederos había tenido que suspenderse varias veces porque no había sido posible obtener la prueba de que la Sra. Valdés Duprey es heredera de don Juan Duprey Ullanga. En San Juan, Puerto Rico, a 13 de febrero de 1967. (Fdo.) EDUARDO E. ORTIZ, Comisionado Especial."

El Tribunal concedió a las partes término para presentar objeciones al anterior Informe, que fueron presentadas oportunamente por el Querellado.

Hemos dado detenida consideración al Informe del Comisionado Especial y a las objeciones contra dicho Informe a la luz de toda la evidencia en el récord, y debemos concluir que las conclusiones de hecho del Comisionado Especial están amplia y sustancialmente sostenidas por la prueba practicada.

Sostenidas dichas conclusiones de hecho, las mismas evidencian una grave conducta antiprofesional, contraria a los

cánones de ética que rigen la conducta del abogado, y altamente lesiva a los intereses de aquellos que confiaron en el querellado y le encargaron, como abogado, la gestión y defensa de esos intereses.

*Se dictará sentencia decretando la separación del querellado José Castro Figueroa del ejercicio de la profesión de Abogado-Notario en Puerto Rico.*