*In re* GREGORIO AYUSO RAMÍREZ, querellado.

*Números*: O-73-65, O-72-179     *Resuelto*: 1ro. de marzo de 1974

El querellado, por sí, y representado por *Plinio Pérez Marrero* y *Richard Ramos Algarín* (Caso O-72-179), y *Aníbal Flores Betancourt* (Caso O-73-65); *Myriam Naveira de Rodón, Procuradora General, J. F. Rodríguez Rivera, Procurador General Interino, Américo Serra, Peter Ortiz, Cándita R. de Orlandi* y *Magda Hydel de Martí,* abogados del querellante.

PER CURIAM: La vorágine provocada por el barco que se hunde puede arrastrar y llevarse a quien no se aleja a tiempo. La contumaz asociación del querellado con un ex-abogado a quien este Tribunal separó permanentemente de la profesión por dictamen en *In re Castro Figueroa,* 96 D.P.R. 317 (1968), lo ha llevado a cumplir el mismo destino.

Son dos los expedientes de desaforo contra este abogado que ahora consolidamos para resolver. El querellado, admitido a la práctica de la abogacía en el año 1960 y del notariado en el 1963, autorizó como notario público la escritura Núm. 19 de 23 de septiembre de 1969 en la que figuran los miembros de la Sucesión Dones Martínez vendiendo una finca urbana a

Luis Felipe Molano. La escritura fue inscrita en el Registro de la Propiedad y para completar el precio de $8,500 hubo de tomar el comprador $5,000 en calidad de préstamo del Banco de San Juan, dándole en garantía hipotecaria el mismo inmueble. José Castro Figueroa, separado de la profesión de abogado en el año 1968, había intervenido en asuntos de la Sucesión Dones Martínez compuesta por 12 herederos y tenía en su poder toda la documentación del patrimonio hereditario. Castro Figueroa tomó la firma del comprador Molano en el taller mecánico de éste y recibió de sus manos el importe del precio. Como pasara el tiempo y no le entregaran la propiedad, Molano instó demanda de desahucio en precario contra sus supuestos vendedores que no prosperó pues salió a la luz que ninguno de los miembros de la Sucesión, dueña de la finca urbana en litigio, conocía al notario querellado, ni había firmado la escritura de venta ni recibido parte alguna del precio. Subsiguientemente la Sucesión presentó demanda sobre nulidad de título contra Molano, el Banco de San Juan, Castro Figueroa y Ayuso Ramírez. El querellado no presentó prueba en su defensa de cargos fundados en el Preámbulo y en el Canon 33 del Código de Etica Profesional[1] y la Ley Notarial.[2]

---

[1] Preámbulo Código de Etica

"En Puerto Rico, donde el sistema democrático es fundamental para la vida de la comunidad y donde la fe en la justicia se considera factor determinante en la convivencia social, es de primordial importancia instituir y mantener un orden jurídico íntegro y eficaz, que goce de la completa confianza y apoyo de la ciudadanía.

"La consecución de estos fines le impone a los miembros de la profesión jurídica, sobre quienes recae principalmente la misión de administrar la justicia y de interpretar y aplicar las leyes, el deber de desempeñar su alto ministerio con la mayor y más excelsa competencia, responsabilidad e integridad.

"En particular, el logro de estos fines le exige al abogado:

(a) que entienda que el fin primordial de su función como jurista es el servicio a la sociedad, servicio que tiene que estar dirigido principalmente a lograr la existencia real de un orden jurídico íntegro y eficaz y que tiene que estar orientado esencialmente por los principios de vida democrática y

La conducta del querellado acusa corrupción y total desprecio de la dignidad profesional. Con sus actuaciones, enterado como estaba de los turbios manejos de Castro Figueroa, permitió y facilitó a éste la práctica ilegal de la abogacía y

de respeto a la inviolable dignidad del ser humano que rigen la convivencia social en el país;

(b) que tenga presente siempre que las gestiones de su profesión afectan de una manera sustancial los aspectos principales de la vida comunal;

(c) que reconozca que existe un imperioso interés social en que todo ciudadano que lo necesite tenga fácil acceso a los servicios legales de abogados cuya conducta sea siempre honrosa, diligente y educada;

(d) que esté consciente de la importancia de evitar aun la apariencia de conducta impropia;

(e) que tenga un compromiso solemne e inquebrantable, no sólo de conducir su propia persona de acuerdo con los anteriores principios y los que siguen, sino también de velar porque la conducta de sus compañeros de profesión, se rija igualmente por dichas exigencias.

"Los cánones de ética profesional que a continuación se enumeran son adoptados por el Colegio de Abogados de Puerto Rico como normas mínimas que fijan de manera más concreta la conducta que la sociedad le exige a los miembros del foro. La enumeración de deberes específicos, sin embargo, no deja de hacer mandatorias otras obligaciones no señaladas en este cuerpo de normas y que son inherentes a la responsabilidad social y profesional de los juristas y a la conducta moral que se espera de todo miembro de la profesión. Estará vedado al abogado violar los presentes cánones aun por medios indirectos o mediante el empleo de terceros."

Canon 33.

"Tanto en su propia oficina como fuera de ésta el abogado tiene la obligación de evitar la práctica ilegal de la abogacía o la notaría por personas no autorizadas para ello. Será impropio de un abogdo el permitir o facilitar a una persona o entidad que no esté autorizada a ejercer la abogacía o el notariado que cobre total o parcialmente por los servicios profesionales o notariales prestados por el abogado.

"También es indebido que un abogado o firma legal permita que personas no autorizadas a ejercer la profesión de abogado o notario en Puerto Rico suministren cualquier clase de consejo legal a clientes del abogado o de la firma legal aun cuando para ello dichas personas no tengan que comparecer a los tribunales. Esto no impide que el abogado o la firma legal se asesore con una persona no autorizada a ejercer la abogacía en Puerto Rico para prestar un mejor servicio a su cliente.

"Será impropio de un abogado el unirse en sociedad con una persona que no ha sido autorizada a ejercer la abogacía o la notaría cuando cualquiera de las actividades de la sociedad envuelva la práctica de la abogacía o la notaría."

(2) Ley Notarial, Núm. 99 aprobada el 27 de junio de 1956, ef. 1ro. de enero de 1957 (4 L.P.R.A. secs. 1001 y ss.):

puso a su disposición todos los elementos formales representativos de la fe pública notarial de la que era guardador, dando acceso al Registro de la Propiedad a un documento no otorgado ante él y señalado como el ropaje del fraude y la estafa.

Si hemos de conservar la confianza del pueblo en sus abogados, no puede haber desviación de la integridad exigida por los cánones de ética, que no toleran "ni aun la apariencia de conducta impropia."

Esta que ahora resolvemos es la segunda querella de desaforo contra este abogado. En la primera que lleva el Núm. O-72-179 el querellado también en asociación y connivencia con Castro Figueroa fue instrumento dúctil prestando su representación profesional en un caso de divorcio sin tener encomienda ni autorización de la parte demandante que supuestamente servía, en contravención del Canon 17 del Código de Etica.(3)

El abogado que pone su título al servicio de un desaforado vulnera el mandato del Tribunal Supremo, lesiona la sociedad

"Sec. 1—El notario es el único funcionario autorizado para dar fe y autenticidad, conforme a las leyes, a los contratos y demás actos extrajudiciales que ante su presencia se realicen.

"Sec. 9—Escritura original es la que redacta el notario sobre el contrato o acto sometido a su autorización, y que firman los otorgantes y los testigos, en los casos en que este Capítulo exija o permita la comparecencia de estos últimos autorizándola el notario ante el que se otorgue, con su firma, signo, sello y rúbrica, no siendo permitido el firmar con estampilla.

"Sec. 16—Los notarios darán fe en los instrumentos públicos de que conocen a las partes, o de que se han asegurado de su conocimiento por el dicho de testigos. También darán fe acerca de la edad, estado, profesión y vecindad de los otorgantes, con relación al dicho de los mismos, y en caso de que fuera casada la persona que aparezca como adquirente del derecho que es objeto del contrato, se expresará el nombre y apellido del cónyuge que no comparezca al otorgamiento."

(3) Canon 17 de Etica Profesional

". . . [la comparecencia del abogado] ante un tribunal debe equivaler a una afirmación sobre su honor de que en su opinión el caso de su cliente es uno digno de la sanción judicial. La firma de un abogado en una alegación en un caso equivale a certificar que ha leído la alegación y que de acuerdo con su mejor conocimiento, información y creencia está bien fundada."

que seguirá sufriendo la deshonestidad y la corrupción de aquél y degrada el buen nombre de su profesión.

No encontramos en la manifiesta insensibilidad ética del querellado, en su reiterada conducta inmoral e impropia ningún indicio redentor.

*Se le separará permanentemente del ejercicio de la profesión de abogado y notario.*