2003 WY 3

**Albert V. METZ, Jr., Appellant (Defendant),**

v.

**Kathryn K. METZ, Appellee (Plaintiff).**

No. 02–110.

Supreme Court of Wyoming.

Jan. 13, 2003.

Frank R. Chapman of Beech Street Law Office, Casper, Wyoming, Representing Appellant.

Lea Kuvinka of Kuvinka & Kuvinka, P.C., Jackson, Wyoming, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Albert V. Metz, Jr. (husband) appeals from the property distribution portion of a divorce decree awarding his ex-wife, Kathryn K. Metz, now known as Kathryn K. Karst (wife), part of his past and future disability insurance benefits. He also claims the trial court erred in presiding over the divorce trial after hearing evidence concerning the parties' failed settlement mediation. We find no error and affirm.

## ISSUES

[¶ 2] The husband presents the following issues:

1. The trial court committed reversible error when it included [the husband's] disability insurance benefits in the marital estate and awarded [the wife] one-half of the monthly disability insurance benefits and the sum of $75,000 for past disability insurance benefits.

2. The trial court committed reversible error when it heard [the wife's] Motion to Enforce a Settlement Agreement and subsequently conducted a bench trial in the same divorce action.

The wife restates the issues as follows:

A. Did the trial court abuse its discretion in making a division of property designed to equalize the parties' incomes after they had been married for 35 years and the trial court found that both parties should be left in similar economic circumstances after the divorce?

B. In absence of any motion to disqualify or objection by the Appellant/Husband prior to trial, did the trial judge commit reversible error by conducting a trial after finding in favor of the Appellant/Husband and denying the Appellee's/Wife's motion to enforce settlement?

## FACTS

[¶ 3] In October of 1999, after thirty-three years of marriage, the wife filed for a divorce from the husband. At the time the divorce was finalized in January of 2002, both the husband and the wife were in their late fifties. The husband was a neurosurgeon who retired from his practice in July 1999 due to a medical disability relating to his knee and cervical vertebrae. Except for working as a medical research technician while the husband finished medical school and several part-time jobs over the years, the wife primarily stayed home with the couple's two children during the marriage. She also managed the family finances throughout the marriage. At the time of the divorce, neither party was, nor did they expect in the future to be, employed full time. The husband estimated the value of the couple's assets at approximately $3,000,000, consisting of a residence in Casper; a vacation home in Teton County; various investment, retirement, and bank accounts; future disability insurance benefits; and numerous items of personal property.

[¶ 4] One of the main areas of contention in the divorce proceedings concerned the payments from a disability insurance policy which the husband began receiving after closing his medical practice. The husband applied for the policy in 1986, and the premiums were paid out of family funds. The husband began receiving payments after his retirement in 1999. Prior to his receipt of the first payment, the parties had separated. At the time of the divorce, the husband had received $189,000 from the policy and expected to receive an additional $6,500 per month until he reached the age of sixty five. None of the disability benefits received up to the time of the divorce had been shared with the wife.

[¶ 5] The parties attempted on two occasions to resolve their differences through mediation, first with a retired district judge acting as mediator and then, on October 13, 2001, with the parties' certified public account (who is also a licensed attorney) acting as mediator. Following the second mediation, the wife filed a motion to enforce the settlement agreement claiming the parties had reached a legally enforceable settlement agreement for which she paid valuable consideration and the husband reneged on the agreement. A hearing was held on the motion on January 4 and 7, 2002. After hearing testimony and the arguments of counsel, the trial court denied the motion to enforce the settlement agreement, finding there was not a mutual assent during the mediation sufficient to create a contract. The case proceeded to trial on January 14 through 16, 2002, and on January 23, 2002, the trial court entered findings of fact, conclusions of law, and a decree granting the divorce and dividing the property as evenly as possible between the parties. In addition to its other findings and conclusions, the trial court made the following award which the husband challenges on appeal:

2. [The wife] is awarded the sum of $2112.5[0] per month or one half of the monthly disability payments received by [the husband], whichever is greater, as a division of property to be paid by the [husband] each month so long as the [husband] continues to collect his disability benefits …; and the sum of $75,000.00 to compensate the [wife] for past disability payments received by the [husband] during the separation and not shared with the [wife].

## STANDARD OF REVIEW

[¶ 6] The husband claims the trial court abused its discretion in awarding the wife a portion of the disability benefits and presiding over the divorce trial after hearing evidence of the failed settlement. The ultimate question in determining whether an abuse of discretion occurred is whether the trial court could have reasonably concluded as it did. *Horn v. Welch*, 2002 WY 138, ¶ 8, 54 P.3d 754, ¶ 8 (Wyo.2002). We will not disturb a property division in a divorce case, except on clear grounds, as the trial court is usually in a better position than the appellate court to judge the parties' needs and the merits of their positions. *Paul v. Paul*, 616 P.2d 707, 712 (Wyo.1980); *Warren v. Warren*, 361 P.2d 525, 526 (Wyo.1961).

## DISCUSSION

### A. Distribution of Disability Insurance Benefits

[¶ 7] The husband claims the trial court abused its discretion when it included the benefits from the disability policy in the property distribution. He argues first that the disability benefits should not have been included because they were not property which was the product of the marital union acquired during the course of the marriage by the joint efforts of the parties as Wyo. Stat. Ann. § 20–2–114 (LexisNexis 2001) has been interpreted to require. *France v. France*, 902 P.2d 701, 704 (Wyo.1995). He further argues that the disability benefits were separate property not subject to division under Wyo. Stat. Ann. § 20–1–201 (LexisNexis 2001).[1]

[¶ 8] Addressing the latter statute first, this court has repeatedly held that a married person's separately owned property, like jointly owned property, is subject to distribution in a divorce action. *Mann v. Mann*, 979 P.2d 497, 499 (Wyo.1999). Even assuming, therefore, that the husband properly characterizes the benefits from the disability insurance policy as separate property, they were subject to division by the trial court in the same manner as the parties' jointly owned property.

[¶ 9] We turn next to the question of whether the trial court properly included the benefits from the disability insurance policy as property subject to equitable distribution under § 20–2–114, which provides:

> In granting a divorce, the court shall make such disposition of the property of the parties as appears just and equitable, having regard for the respective merits of the parties and the condition in which they will be left by the divorce, the party through whom the property was acquired and the burdens imposed upon the property for the benefit of either party and children. The court may decree to either party reasonable alimony out of the estate of the other having regard for the other's ability to pay and may order so much of the other's real estate or the rents and profits as is necessary be assigned and set out to either party for life, or may decree a specific sum be paid by either party.

The husband correctly asserts that, under this statute, the property subject to division consisted of property which was the product of the marital union and was acquired during the course of the marriage by the parties' joint efforts. *France*, 902 P.2d at 704. Applying this standard, we said in *France* that it was not an abuse of discretion to award the wife property she had received as a gift or by inheritance from her parents. *Id.* However, we do not find that holding to be particularly relevant to the facts of this case given that we are not concerned here with a gift or inheritance but are concerned with benefits from a disability policy paid for out of the marital estate during the marriage.

[¶ 10] In determining whether those benefits were properly included in the property to be divided, we look first to that portion of the benefits received by the husband before the divorce—benefits totaling $189,000, of which $75,000 was awarded to the wife. We hold the trial court did not abuse its discretion in making that award to the wife. Under the facts presented here, that portion of the disability payments from the insurance policy received by the husband prior to the divorce substituted for income he would have otherwise earned and was "the product of the marital union and was acquired during the course of the marriage by the joint efforts of the parties." *Id.*

---

1. Section 20–1–201 provides:

 All property belonging to a married person as his separate property which he owns at the time of his marriage or which during marriage he acquires in good faith from any person by descent or otherwise, together with all rents, issues, increase and profits thereof, is during marriage his sole and separate property under his sole control and may be held, owned, possessed and enjoyed by him the same as though he were single. Such property is not subject to the disposal, control or interference of his spouse and is exempt from execution or attachment for the debts of his spouse if the property was not conveyed to him by his spouse in fraud of his creditors. The necessary expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, for which they may be sued jointly or separately.

[¶ 11] We consider next whether disability payments which the insurance policy will provide to the husband until he turns sixty-five were properly included in the property division. In concluding that such payments should be included, the trial court said:

14. Due·to the length of·the marriage, the fact that ... the parties['] assets were accrued exclusively during the marriage, and the fact that both parties are, for all practical purposes, retired, the Court finds that the parties' incomes should be made as nearly equal as possible in a property division so that they will be left in similar economic circumstances after the marriage.

In light of the evidence presented, dividing the benefits of the disability policy yet to be received provided the means for leaving the parties in similar economic circumstances after the divorce.

[¶ 12] Despite the trial court's stated purpose, the husband argues the future disability payments were not subject to division because they were not received during the marriage. The husband likens the benefits to money a spouse earns subsequent to divorce. The husband's analysis fails to take into account the fact that these payments will be derived from an insurance policy paid for by his professional corporation during the marriage from funds which otherwise could have been used for family living expenses or invested for the family's benefit. In this sense, the disability benefits are not like earnings post-divorce, which have no relation to the marriage.

[¶ 13] The husband's analysis also fails to take into account that Wyoming law gives the trial court broad discretion ·in divorce actions to arrive at a just and equitable property distribution based upon the evidence before it. Wyoming law also authorizes the trial court to award alimony, although we have recognized that a property award is a preferable modern substitute for alimony. *Belless v. Belless*, 2001 WY 41, ¶ 8, 21 P.3d 749, ¶ 8 (Wyo.2001). If the intent is to adjust the equities between the parties at the time of the divorce, as was the case here, property division, which may encompass a series of payments, is the preferable method.

*Id.* In evaluating the question of whether a property division by the trial court is, in fact, just and equitable, we must analyze the situation from the perspective of the overall distribution of the marital assets and liabilities rather than narrowly focusing on the effects of the disposition of any one particular asset. *Neuman v. Neuman*, 842 P.2d 575, 579 (Wyo.1992). Here, the trial court could have awarded the wife a greater percentage of some other asset in lieu of one-half of the disability payments. However, we cannot conclude that failure to do so was an abuse of discretion. Other considerations, such as liquidity and problems with dividing other property, may well have played a part in the court's decision.

[¶ 14] Moreover, in dividing property, the trial court must assess the parties' respective needs and the merits of their positions. *Mann*, 979 P.2d at 499–500. In reviewing the trial court's determinations in this regard,

"The function of ·this court is not to constitute a reconsideration or retrial of the district court's decision unless the same is clearly unjust and inequitable." *Kane v. Kane*, ... 577 P.2d 172, 174 [ (Wyo.1978) ].

The trial court exercises a broad discretion in adjusting the rights and obligations of parties upon the dissolution of their marriage. We will not disturb the decision of the lower court unless we can say that that discretion was abused, that the result was clearly unjust and inequitable.

*Grosskopf v. Grosskopf*, 677 P.2d 814, 823 (Wyo.1984). Considering all the facts and circumstances of this case, the parties' respective education and employment backgrounds, the length of their marriage, their respective contributions—both economic and noneconomic—to their home and family during the marriage, and their age and current financial circumstances, we cannot say the result reached by the trial court in this case was clearly unjust and inequitable. We, therefore, affirm the property distribution, including the division of disability benefits.

[¶ 15] In reaching this result, we are aware that other courts have held disability benefits are not marital property and are not

subject to distribution upon divorce. See *Gragg v. Gragg,* 12 S.W.3d 412 (Tenn.2000), for a discussion of the various approaches courts have taken on the subject. However, this other precedent does not address the particular facts of this case, and, given Wyoming's statutory scheme and prior case law, we decline to adopt a hard and fast rule that all disability benefits are, or are not, marital property subject to distribution. Rather, the courts must make a·determination on a case-by-case basis according to the particular facts giving careful consideration to the entire marital property and keeping an eye toward a just and equitable distribution. We are satisfied from the record before us that the trial court accomplished that end.

### B. Bench Trial After Hearing on Settlement Efforts

[¶ 16] The husband contends the trial court abused its discretion in presiding over the divorce trial after hearing evidence concerning the parties' settlement mediation. He claims the trial court was no longer impartial after hearing evidence concerning the failed mediation and should have ordered a change of judge for the divorce trial. The husband cites *TZ Land & Cattle Co. v. Condict,* 795 P.2d 1204, 1211 (Wyo. 1990), in support of his claim of judicial prejudice warranting a change of judge.

[¶ 17] The change or disqualification of a judge under the circumstances presented here is governed by W.R.C.P. 40.1(b)(2), which provides in pertinent part as follows:

> (2) Disqualification for Cause. Whenever the grounds for such motion become known, any party may move for a change of district judge on the ground that the presiding judge: ... (E) is biased or prejudiced against the party or the party's counsel. The motion shall be supported by an affidavit or affidavits of any person or persons, stating sufficient facts to show the existence of such grounds.

Nothing in the record suggests, nor does the husband argue, that he moved for a change of judge or filed an affidavit showing the presiding judge was biased or prejudiced as required by W.R.C.P. 40.1(b)(2). The husband asserts his failure to file a motion with a supporting affidavit was not fatal because filing a motion is discretionary and not mandatory, the issue really fell under W.R.C.P. 40.1(b)(4) which provides for a change of judge on the presiding judge's own motion, and the first opportunity he had to raise the issue was on appeal. We find no merit in the husband's claims.

[¶ 18] It is clearly the intent of W.R.C.P. 40.1(b)(2) that disqualification of a judge be initiated by the filing of a motion with a supporting affidavit. It is discretionary only in the sense that the filing of a motion is not mandated in all cases where a party believes a judge is biased; rather, the party may choose to proceed with the presiding judge despite the suspected bias or file a motion for a change of judge. It is not discretionary, however, in the sense asserted by the husband that a party may elect to not seek disqualification by filing a motion; proceed with the presiding judge; and then, after an unfavorable outcome at trial, claim bias or prejudice for the first time on appeal. Particularly where, as here, the basis for the husband's allegation did not arise during trial but rather arose during the hearing on the wife's motion to enforce settlement a full week before trial, we can see no justifiable reason for the delay in raising the issue.

[¶ 19] As for the husband's claim that the presiding judge should have ordered a change of judge on his own motion pursuant to W.R.C.P. 40.1(b)(4), we find nothing in the record before us to support the claim that a change of judge was warranted. The husband points to the trial judge's comments which he made at the close of the evidence on the wife's motion to enforce the settlement and after closing arguments in the same proceeding:

> I want [closing arguments] to be brief because I know exactly what your positions are. I've made up my mind, and you're not going to persuade me otherwise, but you're welcome to be brief.
>
> ....
>
> ... These parties have used the system to quite an extent and they have been unable to resolve their differences. I'm going to resolve those differences and neither one of you may like how it gets re-

solved, and the waffling and all that stuff is over with now.

And there will be no mediation. And it isn't called mediation when a case goes to trial. I'll sit and listen to this some more and then I'm going to decide. And you're not going to have any input in how I decide, and that's the way it's going to be and it may be a lot more painful than where this was when you left Denver.

And so the motion to enforce the settlement agreement is denied, and this case will go to trial as scheduled.

Neither of these comments is sufficient to form a basis for disqualification.

 [¶ 20] We have defined bias and prejudice as follows: "Prejudice involves a prejudgment or forming of an opinion without sufficient knowledge or examination. Bias is a leaning of the mind or an inclination toward one person over another." *Cline v. Sawyer,* 600 P.2d 725, 729 (Wyo.1979). The fair meaning of any remark made by the trial judge must be interpreted in light of the context in which it was made. *Brown v. State,* 816 P.2d 818, 824 (Wyo.1991). From the trial judge's comments, there is no evidence of either bias or prejudice. The first comment asserted by the husband, taken in context, simply reflected the trial court heard the evidence presented by the parties; understood their positions; and, based upon the evidence, reached a decision. The comment further reflected that, while the trial court was willing to allow counsel to make closing arguments, it was firmly convinced from the evidence there was no mutual assent and the comments of counsel in closing argument would unlikely persuade it differently. There simply is nothing about the comment to suggest judicial prejudice.

[¶ 21] The second comment likewise fails to suggest prejudice on the trial court's part. Rather, it reflects the reality of the situation—the parties were unsuccessful in their efforts to settle their differences, resolution of the dispute was now in the trial court's hands, and the court would decide the matter based upon the evidence presented without the parties' consensus. Again, we find nothing prejudicial in the trial court's comment.

[¶ 22] Finally, the manner in which the hearing on the wife's motion to enforce settlement was conducted convinces us no prejudice occurred. Early in the hearing, the husband's counsel objected to testimony concerning the settlement terms, pointing out the issue was whether the parties had entered into an enforceable contract and whether there was a mutual assent, not the details of the failed settlement. The trial court responded as follows:

I don't have any problem with it being appropriate that [the mediator] testifies. I'm not certain that I need to know that they put a value of "X" dollars on this asset and half went to one and half went to the other or anything like that.

I need to know if it was fully explained to them, and what evidence there was that there was an acceptance or a meeting of the minds by each of them and that sort of thing, and I think I can do that independently of the nuts and bolts terms of the agreement.

Thereafter, both the trial court and the parties' counsel were sensitive to the necessity of not getting into the details of the settlement discussions. Under these circumstances, we find no prejudice.

[¶ 23] Affirmed.