# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 127

OCTOBER TERM, A.D. 2022

October 11, 2022

TIMOTHY DEAN LENERS,

Appellant
(Defendant),

v.                                                          S-22-0093

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Steven K. Sharpe, Judge*

*Representing Appellant:*
　　Timothy Dean Leners, pro se.

*Representing Appellee:*
　　Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames\*, Senior Assistant Attorney General; Samuel Williams, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

\* An Order Allowing Withdrawal of Counsel was entered on August 1, 2022.

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**GRAY, Justice.**

[¶1]    A jury convicted Timothy Leners of attempted second-degree murder, and he was sentenced to between twenty-five and thirty-five years in prison.  We affirmed his conviction and the denial of his motion for a new trial based on ineffective assistance of counsel in *Leners v. State*, 2021 WY 67, ¶ 13, 486 P.3d 1013, 1017 (Wyo. 2021), *cert. denied*, --- U.S. ----, 142 S.Ct. 410, 211 L.Ed.2d 220 (2021).  He then filed a pro se motion for a sentence reduction under W.R.Cr.P. 35(b) which the district court denied.  He timely appeals, claiming the district court's denial was based on bias and was an abuse of discretion.  We affirm.

## ISSUES

[¶2]    Mr. Leners proposes seven grounds for reversal.  We consolidate the issues to two:

> 1. Did the district court violate Mr. Leners' right to due process under the Fourteenth Amendment of the United States Constitution when it denied Mr. Leners' motion for a sentence reduction?
>
> 2. Did the district court abuse its discretion when denying Mr. Leners' motion for sentence reduction?

## FACTS

[¶3]    The facts leading to Mr. Leners' conviction are fully set out in *Leners v. State*.  In summary:

> On December 23, 2017, Timothy Leners packed his belongings in Walmart bags, left his wife and four children, and drove from Fremont, Nebraska, to Cheyenne, Wyoming. In the early morning hours that day, his "soulmate," Joyce Trout, [had] invited him to the apartment where she lived with her husband, Chris Trout, and her nine-year-old daughter.
>
> Mr. Leners arrived in Cheyenne in the late afternoon. He planned to oust Mr. Trout from the apartment, move in, and begin life anew with Mrs. Trout.  The reunion did not go as planned.  By the end of the day, Mr. Leners had shot Mr. Trout in the center of his chest.  Mr. Leners, charged with attempted second-degree murder, claimed he shot in self-defense.

1

*Leners*, ¶¶ 3–4, 486 P.3d at 1015 (footnote omitted). After a four-day trial, the jury rejected Mr. Leners' claim of self-defense and found him guilty.

[¶4]     Prior to his sentencing hearing, the district court received a presentencing investigation report (PSI).[1] The report contained a written statement from Mr. Leners in which he set forth his version of the altercation and maintained that he lawfully defended himself. He detailed his status as a disabled veteran, firefighter, husband, and father of a young family. The PSI report noted that Mr. Leners did not have any prior convictions and that he scored low in his recidivism assessment.

[¶5]     At the hearing, Mr. Leners' counsel read a letter from Mr. Leners' wife stating Mr. Leners was a loving husband and father and that the family relied on his disability benefits as its only source of income. She also described Mr. Leners' service in the military and as a firefighter trainer. She noted Mr. Leners' mental and physical health complications and implored the district court to allow Mr. Leners to remain in the community with his family. Mr. Leners' counsel then highlighted Mr. Leners' military service, his disabilities, and his low risk of recidivism.

[¶6]     Mr. Leners also spoke. He asserted he acted in self-defense and requested probation. He explained his impeccable behavior while on bond, described his long history of volunteer work with veterans, and spoke about his training of 8,000 firefighters. He told the district court that his family depended on him and his benefits for income.

[¶7]     In its oral sentence, the district court noted that it heard the entire trial. It summarized the circumstances of the charge against Mr. Leners and Mr. Leners' role in the altercation. The district court reviewed the aggravating factors it relied on in determining Mr. Leners' sentence—the violent nature of the crime and the serious injury to the victim. The court acknowledged mitigating factors including Mr. Leners' lack of criminal history, his service to the country, and the absence of substance abuse. After balancing these factors, the district court sentenced Mr. Leners to between twenty-five and thirty-five years in prison. *Leners*, ¶¶ 5, 13, 486 P.3d at 1017. The penalty for attempted second degree murder is not less than twenty (20) years and up to life imprisonment. Wyo. Stat. Ann. § 6-2-104; Wyo. Stat. Ann. § 6-1-301; Wyo. Stat. Ann. § 6-1-304.

---

[1] Mr. Leners did not include the original sentencing materials or transcript in his record designation. It is well settled that we can take judicial notice of our own records from prior proceedings in the same case. *Hultgren v. State*, 2011 WY 139, ¶ 6, 261 P.3d 753, 754 n.1 (Wyo. 2011); *Ellis v. Cauhaupe*, 71 Wyo. 475, 482, 260 P.2d 309, 311 (1953). Mr. Leners designated the sentencing transcript in his first appeal, *Leners v. State*, 2021 WY 67, 486 P.3d 1013 (Wyo. 2021), and we take judicial notice of the sentencing transcript to resolve whether Mr. Leners' motion for sentence reduction presented new evidence previously not considered at sentencing.

[¶8]     On January 26, 2022, Mr. Leners timely filed a Rule 35(b) motion for reduction of sentence.  The motion, including attachments, consists of eighty-four pages.  It raises seven grounds for relief and includes the following:

**Exhibit A.**    Mr. Leners' "plea and statement of cause for sentence reduction" which includes an expression of his wish to read this statement out loud at a hearing on the motion.   His statement emphasizes his otherwise crime-free life, his charitable activities, and his family's need for his presence in the household.   He points to facts that, in his view, prove his innocence and details the physical and mental risks to his health from being imprisoned while disabled;

**Exhibit B.**    A "self-initiative, education and achievements progress report" authored by Mr. Leners which describes his "lifetime achievements and service to date" and catalogues "illegal" prison conditions;

**Exhibit C.**    An affidavit by Marcia Kline, Mr. Leners' mother-in-law, citing her experience as a former corrections officer and her long acquaintance with Mr. Leners.  She attests that Mr. Leners will not live through his sentence considering his disabilities and that she had never known him to use a weapon against anyone in her thirty-one-year association with him.  She states, the shooting of Mr. Trout was in self-defense, and Mr. Leners received ineffective assistance of counsel;

**Exhibit D.**    An affidavit by Mr. Leners' wife, Kathrine Leners, attesting to his crime-free life and his history of assisting their community which continued while he was released on bond.  She describes his disabilities and the improper physical and mental treatment he is receiving in prison.  She states, that after carefully reviewing the evidence at trial, she believes he is factually innocent.  She discusses his support system should he come home and asserts that the family will not survive if he remains in prison;

**Exhibits E, F, G and H.**    A letter Mr. Leners sent to the director of the Wyoming Department of Corrections outlining recommendations for a veteran-specific program.  A letter from the director of the Wyoming Department of Corrections thanking Mr. Leners for his suggestions.  Two other letters written by Mr. Leners to the director of the Wyoming Department of Corrections, one with suggestions for decreasing incidents of inmates exerting authority over other inmates, and the other with recommendations for increased COVID-19 safety measures;

**Exhibit I.**    Newspaper articles covering Mr. Leners' work training firefighters on new equipment at various locations;

**Exhibit J.**    Mr. Leners' certificate of honorable discharge from the United States Marine Corps;

3

**Exhibit K.**   A letter from the Department of Veterans Affairs finding Mr. Leners permanently disabled, and a letter from the Social Security Administration affirming that Mr. Leners has "ischemic heart disease, degenerative disc disease, major depression, mood disorder, and post-traumatic stress disorder";

**Exhibit L.**   A certification that Mr. Leners earned an associate of applied science degree from Southeast Community College accompanied by documentation that he qualified for the dean's list during his semesters of attendance.

[¶9]   On January 31, 2022, the district court denied Mr. Leners' Rule 35(b) motion for sentence reduction stating:

> At the time of the sentencing hearing, this court carefully reviewed all of the aggravating and mitigating circumstances of this case.  The court found that a sentence of probation was not an appropriate sentence given the violent nature of the crime and the fact that the victim sustained a serious gunshot injury.   The court also appropriately considered the mitigating factors that the Defendant again raises and sentenced the Defendant in the lower end of the applicable statutory range.

[¶10]   On February 16, 2022, Mr. Leners filed a Notice of Intent to Appeal the denial of his motion for sentence reduction and seeking to proceed *in forma pauperis*.   He also requested appointment of counsel.   On February 22, 2022, the district court denied his request for court appointed counsel.   It determined the postconviction appeal of a motion for a reduced sentence was not a critical stage in Mr. Leners' criminal case and that the "Defendant is fully capable of arguing the merits of his Rule 35 motion without the need for court-appointed counsel."   The order denying the appointment of counsel did not address Mr. Leners' motion to proceed *in forma pauperis*.   On March 2, 2022, the clerk of the district court sent Mr. Leners a letter directing him to pay a $240 filing fee.   Mr. Leners responded with a Motion to Correct First Judicial District Court's Erroneous Attempt to Collect Filing Fee.   On March 30, 2022, the district court issued an Order Clarifying Defendant Should Be Allowed to Proceed Without Filing Fees.   The fee was reimbursed.[2]

---

[2] On May 11, 2022, Mr. Leners filed a motion for disqualification of the district court judge—a W.R.Cr.P. 21.1 motion.  The motion, including attachments, consisted of ninety-seven pages and alleged more than "twenty plus distinct manifestations of biases" and sought removal of the district court judge in any future proceedings.  On June 21, 2022, the district court judge, in an Order Assigning Case for Limited Purpose of Resolving Rule 21.1 Motion, questioned subject matter jurisdiction at this point in the proceedings, but found it prudent to reassign the Rule 21.1 motion to another district court judge to determine jurisdiction and, if necessary, the merits of the motion.

*I.*     *Mr. Leners' due process rights under the Fourteenth Amendment of the United States Constitution were not violated when the district court denied his motion for a sentence reduction.*

[¶11]   Mr. Leners contends the district court judge's personal bias against him resulted in the denial of his motion for a sentence reduction and violated his Fourteenth Amendment right to due process.  The State responds that Mr. Leners' claims of judicial bias are without merit.

**Standard of Review**

[¶12]   The question of whether an individual was afforded constitutional due process is one of law, which we review de novo.  *Booth v. Booth*, 2019 WY 5, ¶ 11, 432 P.3d 902, 907 (Wyo. 2019); *see also KC v. State*, 2015 WY 73, ¶ 16, 351 P.3d 236, 241 (Wyo. 2015); *In interest of DT*, 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017).  We have explained our standard of review as follows:

> The party claiming an infringement of his right to due process has the burden of demonstrating both that he has a protected interest and that such interest has been affected in an impermissible way.  The question is whether there has been a denial of fundamental fairness.

*Matter of NRAE*, 2020 WY 121, ¶ 12, 472 P.3d 374, 377 (Wyo. 2020) (quoting *In re MC*, 2013 WY 43, ¶ 29, 299 P.3d 75, 81 (Wyo. 2013) (quoting *In re KMO*, 2012 WY 100, ¶ 30, 280 P.3d 1216, 1224 (Wyo. 2012))).

**Analysis**

[¶13]   Mr. Leners asserts that the district court judge "systematically targeted Defendant at every turn using [the judge's] office to prevent [Mr. Leners'] ability to be heard[.]"[3]

---

[3] While we have not imposed sanctions, the tone of Mr. Leners' argument comes dangerously close to warranting an order striking this portion of his brief "due to Appellant's repeated use of disrespectful language against the district court, this Court, and others." *Gose v. City of Douglas*, 2009 WY 131, ¶ 1, 218 P.3d 945, 946 (Wyo. 2009).  We will not be so lenient in the future.  "Appellants' repeated use of disrespectful language goes beyond the bounds of what this Court can be expected to tolerate." *Id.* ¶ 5, 218 P.3d at 947.  "This court simply will not allow liberal pleading rules and pro se practice to be a vehicle for abusive documents.  Our pro se practice is a shield against the technical requirements of a past age; it is not a sword with which to insult a trial judge." *Id.* ¶ 3, 218 P.3d at 946–47 (quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005)).  We will not detail the pervasive occurrences of these arguments.  "Suffice it to say that Appellants' digressions are numerous and improper." *Id.* ¶ 6, 218 P.3d at 947.  "A *pro se* litigant is entitled to some leniency from the stringent standards applied to formal pleadings drafted by attorneys.  However, there must be a reasonable adherence to the procedural rules and

[¶14]  "An independent and impartial decisionmaker is crucial to the effective functioning of our justice system." *Brown v. State*, 816 P.2d 818, 858 (Wyo. 1991) (quoting Paul B. Lewis, *Systemic Due Process: Procedural Concepts and the Problem of Recusal*, 38 U. Kan. L. Rev. 381, 409 (1990)).  "[T]he floor established by the Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997) (citations and quotation marks omitted).

[¶15]  "An accusation that a judge is biased is a serious claim." *Taulo-Millar v. Hognason*, 2022 WY 8, ¶¶ 43–44, 501 P.3d 1274, 1286 (Wyo. 2022) (quoting *Guy-Thomas v. Thomas*, 2015 WY 35, ¶ 8, 344 P.3d 782, 785 n.4 (Wyo. 2015)).  While we have not previously considered judicial bias in the context of a Rule 35(b) motion, our cases considering motions to disqualify a judge are applicable.  "Prejudice involves a prejudgment or forming of an opinion without sufficient knowledge or examination.  Bias is a leaning of the mind or an inclination toward one person over another." *Id.* (quoting *Metz v. Metz*, 2003 WY 3, ¶ 20, 61 P.3d 383, 389 (Wyo. 2003) (quoting *Cline v. Sawyer*, 600 P.2d 725, 729 (Wyo. 1979))).  "[T]he party alleging a claim of bias or prejudice must present specific facts showing prejudgment or a leaning of the mind to the extent that the district court's decision was *based on grounds other than the evidence before it*"; "[m]ere allegations will not suffice to show bias or prejudice[.]" *Steiger v. Happy Valley Homeowners Ass'n*, 2010 WY 158, ¶ 33, 245 P.3d 269, 278–79 (Wyo. 2010) (emphasis added) (citing *Reichert v. State*, 2006 WY 62, ¶ 37, 134 P.3d 268, 278 (Wyo. 2006), and *TZ Land & Cattle Co. v. Condict*, 795 P.2d 1204, 1211 (Wyo. 1990)).  *See also DeLoge v. State*, 2007 WY 71, ¶ 12, 156 P.3d 1004, 1008 (Wyo. 2007) ("To demonstrate judicial bias, or prejudice, an appellant must show more than the fact that the trial court ruled against him, correctly or incorrectly, on a particular matter." (citing *Brown v. Avery*, 850 P.2d 612, 616–17 (Wyo. 1993))).

[¶16]  In support of his argument, Mr. Leners first claims the judge did not even read his motion for sentence reduction despite the district court's "preposterous claims" that it had reviewed the motion and the record.  He bases this allegation on his belief that his eighty-four-page motion was received and decided on the same day.  He posits "Any court employee, lawyer, person with any experience with court or office processes at all, or even a person with simple common sense knows there is simply no humanly possible way all of the physical and time-stamped 'processes' legitimately took place on the very same day[.]"

requirements of the court." *Hodson v. Sturgeon*, 2017 WY 150, ¶ 3, 406 P.3d 1264, 1265 (Wyo. 2017) (citing *Hodgins v. State*, 1 P.3d 1259, 1262 (Wyo. 2000)).

We also note that Mr. Leners' brief is over the sixty-page limit of W.R.A.P. 7.05.  Apparently, he believed the limit is seventy pages, which was the limit before a 2018 rule change.  Here, too, we will show Mr. Leners the leniency we can afford pro se litigants and accept that he did not intentionally exceed the page limit. *See Rammell v. Mountainaire Animal Clinic, P.C.*, 2019 WY 53, ¶ 14, 442 P.3d 41, 46 (Wyo. 2019); *Zeitner v. Shank*, 2012 WY 157, ¶ 11, 290 P.3d 180, 184–85 (Wyo. 2012); *Young v. State*, 2002 WY 68, ¶ 9, 46 P.3d 295, 297 (Wyo. 2002).

This argument misstates the record. Mr. Leners' motion was filed on January 26, 2022. The district court's order denying the motion was filed on January 31, 2022. He has failed to provide any authority suggesting the five-day time span between filing and decision implies inadequate consideration of the motion by the district court or otherwise establishes bias.

[¶17] Mr. Leners next asserts that evidence of bias is found in the district court's order denying his motion for a new trial. In that order the district court stated:

> In short, the court can analogize Defendant's self-defense arguments at trial to a doomed and sinking ship. Defendant's self-defense ship sustained heavy damage to both bow and stern long before the State introduced Exhibit 50.[4] The State inflicted serious damage to the ship's hull through the victim's testimony that the jury obviously found more credible than the Defendant's version of events. The ship's propeller had been blown asunder by the physical evidence (e.g., the bullet "strike mark" on the cement) corroborating the victim's testimony that the Defendant was standing over him (with the victim on his back) when the shot was fired. The ship's pump room was severely damaged by the photographs of Defendant, and the recording of the shooting, that did not support Defendant's claim he was attacked and beaten by the victim before the shooting. Defendant's self-defense ship was rapidly taking on water and destined to sink. While the recorded calls [Exhibit 50] may have hastened its ultimate demise, Defendant's self-defense ship was already charted on its inevitable path to the bottom of the ocean long before Exhibit 50 was dropped on its deck.

[¶18] Mr. Leners argues the district court's comparison of his evidence to a sinking ship was "a veritable onslaught of . . . judicial impropriety, prejudice, harassment, open hatred, scorn and abuse[.]" While Mr. Leners may have been offended, nothing in the decision or the analogy shows "prejudgment or a leaning of the mind to the extent that the district court's decision was based on grounds other than the evidence before it." *Steiger*, ¶ 33, 245 P.3d at 279 (citing *Reichert*, ¶ 37, 134 P.3d at 278). The use of analogy in written

---

[4] Exhibit 50 was an audio recording with excerpts of several calls Mr. Leners had recorded on his cell phone prior to arriving in Cheyenne.

> The excerpts included recordings where Mr. Leners called Mr. Trout a troll, rapist, and pig. In two of the calls, he expressed a desire to kill Mr. Trout and a willingness to kill anyone who got in the way of his happiness with Mrs. Trout. The phone calls were detailed and graphic.

*Leners*, ¶ 12, 486 P.3d at 1017.

orders is not unique to the district court in this case. It colorfully states the district court's view of the evidence, not the individual, and does not establish bias. *See, e.g.*, *Ken v. State*, 2011 WY 167, ¶ 37, 267 P.3d 567, 577 (Wyo. 2011) (Golden J., concurring in part and dissenting in part) (using the analogy of a "Hail Mary" pass); *see also In re Marriage of Virdi*, 2014 IL App (3d) 130561, ¶ 33, 13 N.E.3d 333, 341 (plaintiff "elected to throw off her life jacket and ride a sinking ship into the deepest abyss in the sea"); *In re Ayuso Ramirez*, 102 P.R. Dec. 65 (1974) ("The vortex caused by the sinking ship may drag along with it and pull down those who fail to move away on time. Respondent's stubborn association with a former attorney . . . has led him to follow the same destiny." (citation omitted)); *Com. v. Dillworth*, 246 A.2d 859, 872 (Pa. 1968) ("The Majority Opinion makes me think of a person aboard a sinking ship who, instead of leaping overboard clutching a lifesaver, decides to wrap his arms around the anchor."). Mr. Leners' objection to the district court's assessment of the evidence does not establish judicial bias.

[¶19] Mr. Leners next contends that the judge's denial of his request for appointed counsel in this appeal is proof of bias. He argues this is especially true considering that he is classified as 100% disabled by the Department of Veterans Affairs and Social Security Administration. He cites no law to support this argument or any medically qualified explanation of how his disability would interfere with his ability to appear pro se. There is no right to appointed counsel in an appeal from the denial of postconviction relief. *Gould v. State*, 2006 WY 157, ¶ 29, 151 P.3d 261, 268–69 (Wyo. 2006) (A criminal defendant's right to appointment of counsel under W.R.Cr.P. 44(a)(1) is from the first appearance in the court through appeal. "Rule 44 does not indicate appointment is required for post-judgment proceedings."). Section 7-6-104(c)(vi) establishes that appointment of counsel for post-judgment proceedings is a matter within the district court's discretion. *Id.* ¶ 30, 151 P.3d at 269. "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Bonney v. State*, 2011 WY 51, ¶ 8, 248 P.3d 637, 640 (Wyo. 2011) (quoting *Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998)).

[¶20] Mr. Leners' claim—that the district court deliberately intended to subvert his efforts on appeal by denying appointed counsel to a "100% disabled" person—contravenes his argument that he submitted an eighty-four-page motion that "was unique and outstanding; and that it contained . . . consistent, high quality" evidence. The district court was familiar with Mr. Leners' capabilities having observed him through trial and the sentencing hearing as well as having reviewed the presentence investigation report. We find no bias or abuse discretion in the district court's determination that "Defendant is fully capable of arguing the merits of his Rule 35 motion without the need for court-appointed counsel."

[¶21] Finally, Mr. Leners argues that the district court demonstrated bias when it deliberately failed to rule on his *in forma pauperis* request. He asserts the district court intended "to 'price him out of due process' because he well knew Mr. Leners was now a

8

'state manufactured pauper,'" and this failure was "a 'surprise' deliberately [f]raudulent [c]ollection for a filing fee for this appeal[.]" Once Mr. Leners brought this omission to the attention of the district court, the error was corrected, the fees were returned, and Mr. Leners was allowed to proceed *in forma pauperis*. At most the record reflects an oversight on the part of the district court to rule on Mr. Leners' request.

[¶22] Mr. Leners has failed to establish bias. His due process rights under the Fourteenth Amendment of the United States Constitution were not violated.

## II.    *The district court did not abuse its discretion when it denied Mr. Leners' motion for sentence reduction.*

[¶23] Mr. Leners argues that the denial of his Rule 35 motion for sentence reduction was "a clear abuse of discretion." The State responds that many of Mr. Leners' arguments are not properly within the scope of a Rule 35(b) motion, and his claims of abuse of discretion are without merit.

**Standard of Review**

[¶24] We review a district court's ruling on a Rule 35(b) motion for sentence reduction as follows:

> The district court has broad discretion in determining whether to reduce a defendant's sentence, and we will not disturb its determination absent an abuse of discretion. The sentencing judge is in the best position to decide if a sentence modification is appropriate, and is free to accept or reject information submitted in support of a sentence reduction at its discretion. Our objective on review is not to weigh the propriety of the sentence if it falls within the sentencing range; we simply consult the information in front of the court and consider whether there was a rational basis from which the district court could reasonably draw its conclusion. Because of the broad discretion given to the district court in sentencing, and our significant deference on appeal, this Court has demonstrated many times in recent years that it is a very difficult bar for an appellant to leap seeking to overturn a sentencing decision on an abuse of discretion argument.

*Coffey v. State*, 2021 WY 21, ¶¶ 8–14, 479 P.3d 1263, 1265–66 (Wyo. 2021) (quoting *Mitchell v. State*, 2020 WY 131, ¶ 7, 473 P.3d 1255, 1257 (Wyo. 2020) (quoting *Barrowes v. State*, 2019 WY 8, ¶ 12, 432 P.3d 1261, 1266 (Wyo. 2019))).

**Analysis**

[¶25] Rule 35 provides:

> (a)    *Correction.*—The court may correct an illegal sentence at any time.  Additionally the court may correct, reduce, or modify a sentence within the time and in the manner provided herein for the reduction of sentence.

> (b)    *Reduction.*—A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within one year after the sentence is imposed or probation is revoked, or within one year after receipt by the court of a mandate issued upon affirmance of the judgment or dismissal of the appeal, or within one year after entry of any order or judgment of the Wyoming Supreme Court denying review of, or having the effect of upholding, a judgment of conviction or probation revocation.  The court shall determine the motion within a reasonable time.  Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision.  The court may determine the motion with or without a hearing.

W.R.Cr.P. 35.

[¶26] We have repeatedly noted:

> The purpose of Rule 35 is to give a convicted defendant a second round before the sentencing judge (a second bite at the apple as it were) and to give the judge the opportunity to reconsider the original sentence in light of any further information about the defendant. . . . [H]owever, a sentencing court is free to accept or reject information submitted in support of a sentence reduction at its discretion.  Additionally,

>> [w]e have long held the view that it would be unwise to usurp what is properly a function of the district courts by finding an abuse of discretion in denying a sentence reduction motion simply because it was supported by evidence of a defendant's commendable conduct while incarcerated.

*Coffey*, ¶ 12, 479 P.3d at 1266 (citations and quotation marks omitted).

10

[¶27]   We begin by disposing of Mr. Leners' claims of factual innocence and a violation of his Eighth Amendment rights that are outside the scope of a Rule 35(b) motion given our clear precedent.

[¶28]   First, Mr. Leners insists that his Rule 35 motion for a reduction of sentence should be influenced by his claim of actual innocence.[5]

> "A motion for a sentence reduction cannot be used to attack the validity of a conviction." *Mack v. State*, 7 P.3d 899, 900 (Wyo. 2000); *see also Smith v. State*, 969 P.2d 1136, 1138 (Wyo. 1998) (The function of Rule 35 is "not to re-examine errors occurring at the trial or other proceedings prior to the imposition of the sentence.").

*Silva v. State*, 2014 WY 155, ¶ 10, 338 P.3d 934, 937 (Wyo. 2014).   The district court cannot disregard a jury verdict sustained on appeal in evaluating the request for a sentence reduction.  *See Goetzel v. State*, 2019 WY 27, ¶ 11, 435 P.3d 865, 868 (Wyo. 2019) ("*Res judicata* bars litigation of issues that were or could have been determined in a prior proceeding.  The 'doctrine of res judicata is a rule of universal law pervading every well-regulated system of jurisprudence.'" (citations omitted)); *Amin v. State*, 2006 WY 84, ¶ 5, 138 P.3d 1143, 1144 (Wyo. 2006).

[¶29]   Next, Mr. Leners asserts that his treatment in the prison system endangers his health and will result in his death due to his disabilities in violation of his Eighth Amendment right to be free from cruel and unusual punishment.  In substance, his complaints challenge the *Wyoming Department of Corrections'* administration of his sentence.  We have held such claims cannot be remedied in a motion for a sentence reduction:

---

[5] Postconviction claims of factual innocence may be pursued under the Post-Conviction Determination of Factual Innocence Act, Wyo. Stat. Ann. §§ 7-12-401 through -407, and Wyo. Stat. Ann. §§ 7-14-101 through -108, as amended in 2018.  *Goetzel v. State*, 2019 WY 27, ¶ 13, 435 P.3d 865, 869 (Wyo. 2019).

> The legislature passed the Factual Innocence Act in 2018 to allow a person convicted of a felony offense to petition the court for exoneration if the person can establish that he is factually innocent of the convicted crime(s).  *See generally* Wyo. Stat. Ann. §§ 7-12-401 through -407.  On receipt of a petition filed under the Factual Innocence Act, the district court is required to review the petition and specifically find whether the petition has satisfied each of the requirements set forth in Wyo. Stat. Ann. § 7-12-403(b).  Wyo. Stat. Ann. § 7-12-403(c).  If the petition fails to meet each of subsection (b)'s requirements, the statute expressly mandates that the court dismiss the petition without prejudice.  *Id.*

*Parkhurst v. State*, 2019 WY 63, ¶ 10, 443 P.3d 834, 836–37 (Wyo. 2019) (footnote omitted).

> [T]here are other legal means for challenging a [s]tate's actions in administering a sentence. The DOC has a grievance procedure for inmates to contest decisions made by prison personnel . . . . In addition, if [the prisoner] believes the DOC or BOP rules or regulations are improper or are not being followed, there are other ways to challenge those actions. In some cases, a civil rights action under 42 U.S.C. § 1983 or a petition for writ of habeas corpus may be available. *See* [*Gould*, ¶ 26, 151 P.3d at 268], citing *Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (§ 1983 action); *Shields v. Beto*, 370 F.2d 1003 (5th Cir. 1967) and *Thompson v. Bannan*, 298 F.2d 611 (6th Cir. 1962) (habeas corpus petitions). A declaratory judgment action may also be available to challenge the DOC and/or BOP policies and procedures. *See, e.g.*, *Merchant v. State of Wyo., Dep't of Corrections*, 2007 WY 159, 168 P.3d 856 (Wyo. 2007) (independent civil action against the DOC and BOP for failure to award special good time credit); *Cosco v. Lampert*, 2010 WY 52, 229 P.3d 962 (Wyo. 2010) (independent civil action against DOC for wrongful deprivation of personal property under the prison's regulations).

*Pfeil v. State*, 2014 WY 137, ¶ 25, 336 P.3d 1206, 1213–14 (Wyo. 2014).

[¶30] Mr. Leners' claim of factual innocence is barred by res judicata. His Eighth Amendment claim against the Wyoming Department of Corrections concerning his medical and psychological treatment while in prison cannot be cured in a motion for sentence reduction. Neither claim is cognizable in a motion for sentence reduction.

[¶31] We turn then to Mr. Leners' claims that are within the scope of W.R.Cr.P. 35— abuse of discretion and the inapplicability of precedent to his case. In support of his abuse of discretion argument, Mr. Leners states the "[f]acts show [his motion] was unique and outstanding; and that it contained such consistent, high quality overwhelming new and further developed evidence and affidavits; that its denial was not a 'reasonable conclusion' based on a 'rational basis'; and was thus a clear abuse of discretion." He relies on his exhibits: the excerpt from his PSI proving that he had no criminal record prior to his conviction; his self-authored report evidencing his life of service to others; the news articles documenting his assistance to firefighters; his educational success; the Wyoming Department of Corrections' recognition of his positive input for change; his honorable discharge from military service; and his certifications of disability. While Mr. Leners has used his Rule 35 motion to expound on this information, these facts were, for the most part,

presented at his sentencing hearing.[6]  *See Coffey*, ¶¶ 8–14, 479 P.3d at 1265–66 ("The purpose of Rule 35 is to . . . give the judge the opportunity to reconsider the original sentence in light of any *further information* about the defendant." (emphasis added) (quoting *Mitchell*, ¶ 11, 473 P.3d at 1258)); *see also Sanchez v. State*, 2013 WY 159, ¶ 20, 314 P.3d 1177, 1181 (Wyo. 2013) ("Similarly, the State's assertion that the '[a]ppellant's motion . . . presented no new information to base a modification of sentence on' is not improper.  In fact, this contention technically is correct.").

[¶32]  Mr. Leners points to the "expert" affidavits of Marcia Kline, Mr. Leners' mother-in-law, and Kathrine Leners, his wife.  He argues the affidavits were especially informative, and the district court abused its discretion in refusing to consider them.  In Ms. Kline's affidavit, the only reference to her experience identifies her as a retired corrections officer.  She also asserts that Mr. Leners has been adjudicated a 100% disabled veteran and that she had never known him to use a weapon against anyone during the thirty-one years she has known him.  She maintains that Mr. Leners acted in self-defense and that he received poor representation and an excessive sentence.

[¶33]  Mrs. Kathrine Leners attests to Mr. Leners' history of peaceful service to his family and the members of his community.  She recounts Mr. Leners' selfless actions while on bond (growing a victory garden on his land used to feed the poor).  She describes his history of retreating from conflict until the night he shot Mr. Trout.  Mrs. Leners details Mr. Leners' inadequate treatment for various medical conditions and her belief this will cause his death if he is not released to come home or to a nearby veterans' hospital.  Mrs. Leners asserts that her review of the trial record reveals the truth—Mr. Leners acted in self-defense and is innocent.

[¶34]  Mr. Leners' characterization of these affidavits as expert testimony is misguided.  As we said in *Hoy v. DRM*:

> [I]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.  The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

*Hoy v. DRM, Inc.*, 2005 WY 76, ¶ 23, 114 P.3d 1268, 1280 (Wyo. 2005) (quoting Fed. R. Evid. 702 advisory comms. note (2000 amends.)) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability.  Under *Daubert*, that's

---

[6] The only new information presented by Mr. Leners is his treatment in prison.  As discussed above, *supra* ¶¶ 29–30, this claim is outside the scope of a Rule 35 motion for sentence reduction.

13

not enough.")). Even if Mr. Leners' claims of "factual innocence" and inadequate health treatment in prison could be considered, neither witness has the qualifications to give a legal or medical opinion. Our case law is clear that a "sentencing judge is in the best position to decide if a sentence modification is appropriate, and is free to accept or reject information submitted in support of a sentence reduction at its discretion." *Hall v. State*, 2018 WY 91, ¶ 8, 423 P.3d 329, 331 (Wyo. 2018) (quoting *Alford. v. State*, 2017 WY 105, ¶ 8, 401 P.3d 902, 903 (Wyo. 2017)). The district court did not abuse its discretion in rejecting the opinions of Ms. Kline and Mrs. Leners.

[¶35] Finally, Mr. Leners argues that we should not apply our precedent because his case is unlike any case we have previously considered. He claims his good behavior is a proven lifetime endeavor, not just good behavior during incarceration. We have previously considered similar arguments and found them unavailing. *See LeGarda-Cornelio v. State*, 2009 WY 136, ¶¶ 6–10, 218 P.3d 968, 969–71 (Wyo. 2009) (no abuse of discretion to deny a motion for sentence reduction only because of a prisoner's commendable conduct while incarcerated). We find Mr. Leners' argument unpersuasive. Mr. Leners asserts that his proof of his actual innocence, inadequate medical treatment in prison, and, most especially, the bias of the district court, together, distinguish this case from all others. We have discussed each of these claims above and find no merit in his cumulative argument.

[¶36] Our role in reviewing the denial of a sentence reduction is limited, and we do not substitute our judgment for that of the sentencing court. The objective on review is not to weigh the propriety of the sentence if it falls within the sentencing range. We simply consult the information in front of the court and consider whether there was a rational basis from which the district court could reasonably draw its conclusion. *Hall*, ¶¶ 8–19, 423 P.3d at 331–33. The district court denied Mr. Leners' W.R.Cr.P. 35(b) motion for a sentence reduction. It did so after consideration of the whole record, including the PSI and the transcript of the sentencing hearing.

[¶37] The district court did not abuse its discretion.

[¶38] Affirmed.

14